**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| NOEMÍ JIMÉNEZ DE RODRÍGUEZ,<br><br>Plaintiff,<br><br>v.<br><br>CVS, SEDWICK, and BRITANIE SMALL,<br><br>Defendants. | No. 1:26-cv-10864-JEK |

**MEMORANDUM AND ORDER ON DEFENDANT CVS'S MOTION TO ENFORCE SETTLEMENT AGREEMENT AND PLAINTIFF'S MOTIONS FOR APPOINTMENT OF COUNSEL AND TO PROCEED *IN FORMA PAUPERIS***

**KOBICK, J.**

Plaintiff Noemí Jiménez De Rodríguez, proceeding *pro se*, brings this action against defendant CVS National,[1] alleging that she was injured when she walked out of a CVS and a large piece of an automatic door fell on her head. Pending before the Court is CVS's motion to enforce a settlement agreement that it purportedly reached with De Rodríguez. Because it is plain that no agreement between the parties has been reached, the motion to enforce will be denied. De Rodríguez's motions for appointment of counsel and to proceed *in forma pauperis* will be granted.

## BACKGROUND

On March 29, 2023, De Rodríguez was shopping at a CVS in Dorchester, Massachusetts. ECF 1-1, at 4. As she walked out of the store, "a huge metal piece" from an automatic door fell on her head and shoulders, causing her to "blan[k] out." *Id.* at 4, 28. CVS employees rendered aid and

[1] According to CVS's notice of removal, the docket incorrectly refers to "CVS," but its correct and complete title is CVS National. ECF 1, at 1. Also named as defendants are "Sedwick" and Britanie Small, who have not yet been served. *Id.* ¶ 8.

called an ambulance, and De Rodríguez was taken to the hospital, where she was treated for her injuries. *Id.* at 5, 28.

In December 2025, De Rodríguez brought this action against CVS in Suffolk Superior Court, alleging "personal injury" from the defendants' negligence and seeking damages. *Id.* at 3. Her complaint asserts that she has been in "constant pain" since the accident, that her life has "changed drastically," and that "with trauma [she is] not the same." *Id.* at 5. In February 2026, CVS removed the case to this Court on the basis of diversity of citizenship. ECF 1.

The Court held a scheduling conference in July 2026, at which it learned that De Rodríguez speaks Spanish, not English, and did not have an official interpreter present. ECF 19. Nevertheless, her bilingual son was present and the Court permitted him to interpret for her in that proceeding. *Id.* Through her son, De Rodríguez informed the Court of her difficulties in obtaining counsel and expressed interest in seeking pro bono representation. *Id.* Defense counsel indicated that the parties had tried to confer but had difficulties communicating, and that CVS would not oppose a motion by De Rodríguez to appoint pro bono counsel. *Id.*

Following the hearing, De Rodríguez filed a motion to appoint counsel, ECF 21, and a motion for leave to proceed *in forma pauperis*, ECF 22. CVS then partially opposed the motion to appoint counsel on the grounds that "[t]he parties previously agreed to resolve this matter for $50,000," and a written release memorializing the "binding settlement" resolving De Rodríguez's claims had been prepared and awaited her signature. ECF 23, at 1. CVS contended that it "attempted to address [De Rodríguez's] concerns regarding the release" of liability, but during those communications, De Rodríguez "expressed disagreement with certain provisions of the release and indicated that she wished to have an attorney review the document before signing it." *Id.* at 2. Based on these circumstances, CVS opposed appointment of an attorney who could assist

De Rodríguez with the merits of her claims or the litigation. *Id.* In reply, De Rodríguez disputed that she had come to an agreement with CVS. ECF 24. She attached the draft settlement agreement and an email she sent to CVS's counsel stating, "I have read the release but there are [a] few things that I don't agree with." ECF 24-1, at 6. She further argued that defense counsel's repeated phone calls and emails have made her feel like CVS is "trying to take advantage of" her and "trying to force [her] to do something and sign papers [she] do[es not] agree with or understand." ECF 24, at 2.

CVS then filed a motion to enforce the settlement agreement. ECF 25. CVS maintains that the parties reached an agreement to resolve this matter for $50,000 after translated discussions over the telephone, but De Rodríguez expressed concerns about certain provisions in the release and wished to have an attorney review the release before signing. *Id.* at 1-2. De Rodríguez opposed the motion, again disputing CVS's representations. ECF 27. She asserts that counsel for CVS "gave [her] few options about money" and said that CVS "would offer [her] $50,000," but "never mentioned" multiple provisions in the draft settlement and release, including the scope of the release and the party bearing responsibility for payment of her medical bills since the accident, as well as provisions related to confidentiality, admission of liability, and indemnification. *Id.* at 1-2.

**DISCUSSION**

Because the Court has "an inherent power to supervise and enforce settlement agreements entered into by parties to an action pending before the court," *Dankese v. Def. Logistics Agency*, 693 F.2d 13, 16 (1st Cir. 1982), "a party to a settlement agreement may seek to enforce the agreement's terms when the other party refuses to comply," *Fid. & Guar. Ins. Co. v. Star Equip. Corp.*, 541 F.3d 1, 5 (1st Cir. 2008). Before enforcing a settlement, however, the court "must ascertain whether or not a binding agreement in fact existed." *Malave v. Carney Hosp.*, 170 F.3d

217, 222 (1st Cir. 1999). "Where, as here, the material facts are not in dispute, it is up to the court to determine whether a binding agreement has been reached." *D'Agostino v. Fed. Ins. Co.*, 969 F. Supp. 2d 116, 126 (D. Mass. 2013) (applying Massachusetts law). As the party seeking to enforce a settlement agreement, CVS bears the burden of proving the existence of a contract. *See Moore v. La-Z-Boy, Inc.*, 639 F. Supp. 2d 136, 140 (D. Mass. 2009) (applying Massachusetts law).

"The essential elements for the formation of a contract under Massachusetts law consist of an offer, acceptance, and consideration." *Doe v. Trs. of Bos. Coll.*, 892 F.3d 67, 89 (1st Cir. 2018) (citing *Quinn v. State Ethics Comm'n*, 401 Mass. 210, 216 (1987)).[2] For a contract to be enforceable, "there must be agreement between the parties on the material terms of that contract, and the parties must have a present intention to be bound by that agreement." *Lambert v. Fleet Nat. Bank*, 449 Mass. 119, 123 (2007) (quotation marks omitted). "A settlement agreement is not enforceable, however, if 'material facts are in dispute as to the validity or terms of the agreement.'" *Hansen v. Rhode Island's Only 24 Hour Truck & Auto Plaza, Inc.*, 962 F. Supp. 2d 311, 315 (D. Mass. 2013) (quoting *Bandera v. City of Quincy*, 344 F.3d 47, 52 (D. Mass. 2003)). A material term is "an essential and inducing feature of the contract." *Bucholz v. Green Bros. Co.*, 272 Mass. 49, 52 (1930). Although not all terms must be "precisely specified," the parties must "have progressed beyond the stage of 'imperfect negotiation.'" *Situation Mgmt. Sys., Inc. v. Malouf, Inc.*, 430 Mass. 875, 878 (2000) (quoting *Lafayette Place Assocs. v. Bos. Redev. Auth.*, 427 Mass. 509,

---

[2] Neither party disputes that Massachusetts law governs the interpretation of the purported agreement between CVS and De Rodríguez. The Court will therefore apply Massachusetts contract law to determine whether CVS and De Rodríguez entered into an enforceable settlement agreement. *See Bos. Exec. Helicopters, LLC v. Maguire*, 45 F.4th 506, 514 (1st Cir. 2022) ("Massachusetts law plainly governs" settlement agreement interpretation); *Fid. & Guar. Ins. Co.*, 541 F.3d at 5 ("In this diversity case [interpreting a settlement agreement], we apply Massachusetts contract law."); *Williams v. Astra USA, Inc.*, 68 F. Supp. 2d 29, 36 (D. Mass. 1999) (applying Massachusetts law where the parties cited only Massachusetts law and did not raise any conflict of laws issue).

517 (1998)); *see Geo. W. Wilcox, Inc. v. Shell E. Petrol. Prods., Inc.*, 283 Mass. 383, 390 (1933) ("It is not enough if parties negotiating have agreed upon certain important terms if there has been no agreement on other essential elements of the undertaking.").

It is apparent from the parties' filings that no agreement between CVS and De Rodríguez was ever reached. CVS asserts, in conclusory fashion, that the parties reached an agreement during settlement discussions in "which the material terms of the resolution, including the settlement amount, were communicated and accepted." ECF 25, at 1. The evidence before the Court belies that assertion. The affidavit of CVS's counsel attests that, in a July 27, 2026 phone conversation, with De Rodríguez's son translating, she (1) offered De Rodríguez $50,000, (2) "explained" that settlement would constitute "final resolution" of De Rodríguez's claims, (3) "explained" that De Rodríguez "would not be entitled to seek additional money from CVS . . . relating to the same incident," and (4) "explained" that De Rodríguez "could not later seek additional money from CVS . . . if she had outstanding medical bills or other amounts that remained her responsibility." ECF 25-1, ¶¶ 4-8. The affidavit does not aver that counsel communicated the other terms of the settlement offer to which De Rodríguez now objects, including the scope of the release of liability, confidentiality, admission of liability, and indemnification provisions. De Rodríguez, for her part, represents that the parties never discussed the disputed terms prior to reading the release, which were included to her surprise in the draft settlement agreement. ECF 27, at 1-2. The email correspondence, in which De Rodríguez noted that there were "a few things" in the draft settlement agreement that she did not agree with, confirms that the parties did not reach agreement as to the disputed terms. ECF 24-1, at 6.

The disputed terms—the release of liability, confidentiality, admission of liability, and indemnification provisions—are plainly material. *See D'Agostino*, 969 F. Supp. 2d at 130 (release

that introduced confidentiality and indemnity provisions added "additional material terms" and therefore constituted a counteroffer). Thus, notwithstanding the parties' July 27, 2026 phone conversation, CVS's transmission of a draft settlement agreement and release of liability with additional material terms constituted a new offer that De Rodríguez never accepted. *See id.* at 129-30; *Davis v. Deutsche Bank Nat'l Tr. Co.*, No. 12-cv-11738-JCB, 2015 WL 13679573, at *3 (D. Mass. July 27, 2015) (no agreement on settlement's material terms where plaintiff's email required defendant's "assent to numerous additional terms" and therefore constituted a counteroffer, which defendant did not accept); *Aegis v. Finnegan*, No. 00-cv-11801-GAO, 2002 WL 225924, at *3 (D. Mass. Feb. 12, 2002) (settlement agreement unenforceable where parties agreed on "the basic scope of their agreement, but important material terms were never resolved"). The draft settlement and release did not merely "memorializ[e] the settlement and provid[e] for the customary documentation necessary to conclude the matter," as CVS argues. ECF 25, ¶ 3. Rather, it sought to introduce new material terms that were never previewed for De Rodríguez, in the context of an attempted negotiation between two parties that did not speak the same language. Under the circumstances, CVS's effort to enforce a purported settlement agreement against a plaintiff who is *pro se* and does not speak English is not well taken.[3] The parties did not, accordingly, "progres[s] beyond the stage of 'imperfect negotiation,'" and no binding settlement agreement between De

[3] In addition, the draft settlement and release purport to release and discharge the two unserved defendants in this case, Sedwick and Small. ECF 24-1, at 1. But it is not clear that counsel for CVS has authority to bind those two individuals to this purported settlement agreement, nor is it clear that those individuals were part of settlement discussions or otherwise indicated any intention to be bound by the agreement. This issue also undermines the enforceability of the agreement. *See Malave*, 170 F.3d at 221 ("[T]he decision to settle litigation belongs to the client, not the lawyer. . . . [A] settlement agreement entered into by an attorney is ineffective if the attorney did not possess actual authority to bind the client.").

Rodríguez and CVS exists. *Situation Mgmt. Sys.*, 430 Mass. at 878 (quoting *Lafayette Place Assocs.*, 427 Mass. at 517).

Having concluded that no settlement between the parties exists, the Court will grant De Rodríguez's motions for appointment of counsel and to proceed *in forma pauperis*. ECF 21, 22. The Court directs the Pro Bono Coordinator to make reasonable efforts to find an attorney who is willing to represent De Rodríguez on a pro bono basis. However, because the Court relies on volunteer attorneys to accept appointments on a pro bono basis, the grant of this motion does not guarantee that that an attorney will ultimately be appointed for De Rodríguez.

## CONCLUSIONS AND ORDERS

For the foregoing reasons, CVS's motion to enforce the settlement agreement, ECF 25, is DENIED. De Rodríguez's motion for appointment of counsel, ECF 21, and motion to proceed *in forma pauperis*, ECF 22, are GRANTED.

SO ORDERED.

/s/ Julia E. Kobick
JULIA E. KOBICK
UNITED STATES DISTRICT JUDGE

Dated: November 19, 2026